**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| JONATHAN PICARD,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, and LINDA McMAHON, in her official capacity as Secretary of Education,<br><br>    Defendants. | Case No. _____ |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**PRELIMINARY STATEMENT**

1. The United States government, through the United States Department of Education ("the Department"), is the country's largest creditor of student loans. Today, there are nearly 43 million federal student loan borrowers, with approximately $1.62 trillion outstanding in debt.

2. Congress designed the federal student loan program to expand access to higher education and increase economic mobility regardless of one's financial station. To accomplish this, clear and specific objectives exist for borrowers to have their loans forgiven without being hindered by the debt. Accordingly, among other programs, Congress established the Public Service Loan Forgiveness ("PSLF") program, which allows student loan borrowers to have their federal student loans forgiven in exchange for the borrower dedicating ten years of their lives to working for qualifying public service employers and making 120 payments towards their student loans

1

during 120 months of qualifying employment.

3.    For those borrowers enrolled in PSLF and who meet its requirements, loan forgiveness is mandatory. Notwithstanding this clear Congressional command, the Department has withheld public student loan forgiveness from Plaintiff Jonathan Picard ("Mr. Picard") for several months after he should have been eligible for that forgiveness, depriving him of his statutory and contractual right to debt forgiveness.

4.    As a result of having his loan forgiveness withheld by the Department, Mr. Picard has had his financial future placed on indefinite hold as he remains burdened with a debt that he legally should no longer owe.

5.    Mr. Picard brings this lawsuit to compel the Department to abide by Congress's command to make loan forgiveness available to him pursuant to the PSLF Program.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a case arising under federal law: the Mandamus Act, 28 U.S.C. § 1361; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Mr. Picard resides in West Palm Beach, Florida, and because a substantial part of the events giving rise to these claims occurred in this District.

## PARTIES

8.    Mr. Picard is a 46-year-old non-profit civil rights attorney who, at all relevant times to this action, has resided in West Palm Beach, Florida.  Mr. Picard has federal student loan debt, which qualifies for PSLF forgiveness.

2

9. Defendant United States Department of Education ("Defendant Department") is a federal agency with its principal place of business at 400 Maryland Avenue SW, Washington, D.C. Defendant Department is responsible for administering federal student loan and grant programs in the United States.

10. Defendant Linda McMahon is the Secretary of Education ("Secretary McMahon"). Mr. Picard sues Secretary McMahon in her official capacity. Secretary McMahon is charged with the supervision and management of all decisions and actions of the United States Department of Education, and so all allegations in this complaint against the Department of Education are also made against her.

## FACTUAL ALLEGATIONS

11. PSLF mandates federal student loan forgiveness to public service workers who have worked for ten years in eligible public service jobs while making eligible payments on their federal student loans. *See* 20 U.S.C. § 1087e(m)(1) (The Secretary of Education "shall cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan" for a borrower who "has made 120" eligible "monthly payments on the eligible Federal Direct Loan after October 1, 2007" and "has been employed in a public service job during the period in which the borrower ma[de] each of the 120 payments.").

12. This directive is also included on a borrower's initial master promissory note: "Under this program, we will forgive the remaining balance due on your Direct Loans after you have made 120 payments (after October 1, 2007) on those loans under certain repayment plan while you are employed full-time by a qualifying employer."

13. Mr. Picard has federal student loans, which qualify for the PSLF program. He has always made timely payments on these loans, and he has never been delinquent or defaulted on

this debt.

14.    Since December 2015, Mr. Picard has worked for qualified employers under the PSLF program, and the Department has certified them as qualified employers.  Specifically, Mr. Picard worked for the State of Florida between December 2015 and July 2024.  Then from July 2024 to the present, Mr. Picard has worked as a civil rights attorney for a qualifying 501(c)(3) non-profit organization.

15.    During all times relevant to this action, Mr. Picard was enrolled in qualifying income-contingent repayment ("ICR") plans, and as of 2023 he was enrolled in the Revised Pay As You Earn ("REPAYE") repayment plan.

16.    In 2023, Mr. Picard, along with all federal student loan borrowers in the REPAYE plan, was automatically enrolled in the Saving on a Valuable Education ("SAVE") Plan.[1] The SAVE Plan continued to be an eligible repayment plan for PSLF.

17.    Mr. Picard was on track to have his federal student loan debt forgiven in December of 2025.

18.    Then, in July 2024, Mr. Picard's loans, which had been in the SAVE plan, were placed into administrative forbearance as a result of litigation over the legality of the SAVE plan (the "SAVE Litigation").

19.    The SAVE Litigation does not impact the PSLF statute, regulations, or the Department's contractual obligations with respect to PSLF.

20.    During the administrative forbearance, Mr. Picard was prevented from making PSLF-qualifying payments toward his loans for an entire year.  During that time period, Mr. Picard

---

[1] The Department renamed the REPAYE Plan to the SAVE Plan in July 2023 and made certain other changes to the program. *See* Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program, 88 Fed. Reg. 43,820.

submitted multiple applications to change to a different qualifying repayment plan in order to begin making qualifying payments again.  However, he was repeatedly informed by customer service representatives for his loan servicer, MOHELA, that MOHELA had been instructed by the Department not to process applications to change repayment plans.

21.     In July 2025, Mr. Picard was finally permitted to move into a different qualifying repayment plan.  In August 2025, the administrative forbearance was lifted from his account, and he was allowed to start making qualifying payments again.

22.     The Department has an established process for obtaining PSLF while under deferment or forbearance.  Pursuant to 34 C.F.R. § 685.219(g)(6), a borrower participating in PSLF may obtain credit toward PSLF for those months the borrower was under deferment or forbearance and was employed full-time by a qualifying employer: "For any months in which a borrower postponed monthly payments under a deferment or forbearance and was employed full- time at a qualifying employer . . . the borrower may obtain credit toward forgiveness for those months . . . for any months in which the borrower . . . (i) Makes an additional payment equal to or greater than the amount they would have paid at that time on a qualifying repayment plan." This process is alternatively described as the "Buyback" program.

23.     The Buyback program essentially requires borrowers who would have been eligible to have their loans forgiven but for a period of deferment or forbearance to submit a standard PSLF application and then request and receive reconsideration of that application pursuant to the Buyback program.

24.     A borrower who seeks and receives reconsideration through the Buyback program can receive loan forgiveness as long as they make a lump sum payment equal to or greater than the amount they would have paid as part of their qualifying repayment plan for those months they

remained in deferment or forbearance.

25.     There is no specific Buyback application form. Borrowers requesting Buyback must use the Department's general reconsideration form, which includes a box to check if the borrower is requesting Buyback.

26.     On December 22, 2025, Mr. Picard applied for Buyback by submitting a request for reconsideration of the Departments general PSLF application.  At that time, he had at least 120 months of approved qualifying employment.

27.     To date, Mr. Picard's Buyback application has not been processed.

28.     Through no fault of his own, Mr. Picard has been unable to receive Public Service Loan Forgiveness and is therefore being deprived of his statutory and contractual rights.

29.     The Department's failure to forgive Mr. Picard's debts harms him in several ways. Mr. Picard is forced to continue making monthly payments on debt that should have already been forgiven, and interest on this debt continues to accrue and capitalize.  The loans appear on his credit reports and their continued existence limits Mr. Picard's access to credit.  This state of PSLF limbo also precludes Mr. Picard from considering employment opportunities in the public sector as he is compelled to continue making PSLF-qualifying payments through the end of 2026 despite the fact that his loans were eligible for forgiveness in 2025.

30.     Pursuant to a court order in *American Federation of Teachers v. U.S. Department of Education*, filed in the United States District Court for the District of Columbia (Case No. 1:25-cv-00802-RBW), Defendants have filed monthly status reports identifying the number of PSLF Buyback requests processed and outstanding each month. Between April 30, 2025 and February 28, 2026, the number of unprocessed PSLF Buyback requests nearly doubled, growing from

6

49,318 to over 88,000.[2]  The Department's status reports appeared to show that it processed an average of 2,968 Buyback applications per month, meaning at the current pace it will take more than **two and a half years** to process all presently outstanding Buyback applications.

31.     Thus, with no communication from the Defendants and increasingly slow movement in processing buyback applications, there appears to be no end in sight for Mr. Picard's PSLF buyback application, and he will be forced to continue paying on these loans for an entire year past the date when he was entitled to forgiveness.

32.     The Defendants' continued failure to process Mr. Picard's Buyback application violates its statutory and contractual obligations and Mr. Picard's Due Process rights, and requires this Court to compel Defendants to act.

**COUNT I**
**Unlawful Withholding of Agency Action in Violation of the Administrative**
**Procedure Act, 5 U.S.C. § 706**
**(against all Defendants)**

33.     Mr. Picard repeats and incorporates by reference each of the allegations in paragraphs 1-32 as if fully set forth herein.

34.     The APA authorizes this Court to "compel agency action" that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

35.     The Department is an "agency" as defined in 5 U.S.C. § 701(b).

36.     As alleged above, Defendants have a mandatory statutory, regulatory, and contractual duty to cancel the balance of any borrower who has made 120 PSLF-qualifying payments, including by processing borrowers' PSLF Buyback applications.

37.     Defendants are unlawfully withholding and unreasonably delaying Mr. Picard's

---

[2] In the face of these growing backlogs, the Department chose to unnecessarily and arbitrarily lay off a significant portion of its workforce in 2025, which appears to be exacerbating the problem.

PSLF forgiveness.

38.     Mr. Picard is entitled to injunctive relief compelling the forgiveness of his student loans pursuant to the PSLF and the Buyback program.

**COUNT II**
**Denial of Due Process in Violation of U.S. Const. amend. V**
**(against all Defendants)**

39.     Mr. Picard repeats and incorporates by reference each of the allegations in paragraphs 1-32 as if fully set forth herein.

40.     The Fifth Amendment of the United States Constitution provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law."

41.     As alleged above, Defendants have a mandatory statutory, regulatory, and contractual duty to cancel the balance of any borrower who has made 120 PSLF-qualifying payments, including by processing borrowers' PSLF Buyback applications.

42.     20 U.S.C. § 1087e(m) contains mandatory language requiring Defendants to cancel the balance of interest and principal due from borrowers who qualify for PSLF. Thus, 20 U.S.C. § 1087e(m) creates a cognizable property interest for applicants in PSLF benefits.

43.     Mr. Picard, as someone who would have reached his 120 qualifying payments if not for the involuntary forbearance, has a cognizable property interest in the cancellation of his student loans under the PSLF program.

44.     Defendants' failure to forgive Mr. Picard's federal student loans without any meaningful process violates Mr. Picard's due process rights under the Fifth Amendment.

45.     The Due Process Clause of the Fifth Amendment requires Defendants to provide processes that give PSLF applicants notice and a meaningful opportunity to be heard on issues affecting their eligibility for this statutorily granted entitlement.

8

46.     In delaying Mr. Picard's loan forgiveness for more than a year beyond when he was statutorily and contractually entitled to such relief, and providing no meaningful opportunity to challenge such unreasonable delays, Defendants have violated Mr. Picard's right to due process.

47.     In these ways, and those described herein, Defendants have deprived Mr. Picard of the rights, privileges and immunities secured by the Constitution.

48.     Mr. Picard is entitled to injunctive relief compelling the forgiveness of his student loans pursuant to the PSLF and the Buyback program.

## COUNT III
### Declaratory Judgment Pursuant to 28 U.S.C. § 2201
### (against all Defendants)

49.     Mr. Picard repeats and incorporates by reference each of the allegations in paragraphs 1-32 as if fully set forth herein.

50.     An actual case or controversy exists between Mr. Picard and the Defendants concerning the Defendants' processing of Mr. Picard's PSLF and Buyback application, which has led to Mr. Picard's application being in limbo for over a year with no apparent end in sight.

51.     Defendants are mandated by statute to cancel the balance of interest and principal due from borrowers who qualify for PSLF.

52.     Mr. Picard qualifies for PSLF, submitted his application over a year ago, and Defendants have failed to grant or otherwise process Mr. Picard's application.

53.     Mr. Picard is entitled to a declaration that the Defendants must process and grant Mr. Picard's PSLF and Buyback application as they are legally required to do.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Picard respectfully requests that this Court:

9

A.      Declare that Defendants are unlawfully withholding Mr. Picard's public student loan forgiveness in contravention of law;

B.      Declare that Defendants are unconstitutionally denying Mr. Picard of his property interest in loan forgiveness without due process of law;

C.      Issue permanent injunctive relief compelling Defendants to comply with its statutory, regulatory, and contractual obligations, and with the PSLF statute by granting PSLF forgiveness to Mr. Picard, including by processing his PSLF Buyback applications;

D.      Award attorneys' fees as authorized by law, including, but not limited to, 28 U.S.C. § 2412; and

E.      Grant such further relief as may be just and proper.

Dated: March 29, 2026

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
9000 Dadeland Blvd. #1500
Miami, Florida 33156
james@slater.legal
Tel. (305) 523-9023

*Attorney for Plaintiff Jonathan Picard*